# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 6118 | **DATE** | 4/4/2012 |
| **CASE TITLE** | Mayer Electrical Contracing, Inc vs. Foley et al | | |

**DOCKET ENTRY TEXT**

The Court grants the Trustees' motion for a protective order under Rule 26(c). [29]

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

    Before the Court is Defendant Trustees' Motion for a Protective Order pursuant to Federal Rule of Civil Procedure ("Rule") 26(c). For the reasons set forth below, the Court grants the Trustees' motion and orders that discovery in this case is limited to the administrative record.

### BACKGROUND

    On September 1, 2011, Plaintiff Mayer Electrical Contracting, Inc. ("Mayer") filed its Complaint against Defendants Timothy Foley, Michael Caddigan, Lawrence Crawley, Samuel Evans, James North, William T. Divane, Kenneth Bauwens, Steven Diamond, Kevin M. O'Shea, and Michael Walsdorf, in their capacity as the Electrical Insurance Trustees (collectively, the "Trustees"). (R. 1.) Mayer asks the Court to enter a declaratory judgment declaring that Mayer does not owe $44,436.46 in delinquent fringe benefit contributions under a plan (the "Plan") created pursuant to an agreement between the Electrical Contractors Association of the City of Chicago ("ECA") and Local 134, International Brotherhood of Electrical Workers ("Local 134").

    Mayer alleges that the ECA and Local 134 are parties to a collective bargaining agreement (the "Principal Agreement") and an Insurance Agreement relating to the administration of the Plan. (*Id.* ¶ 6.) On February 4, 1988, Mayer signed a Letter of Assent to the Principal Agreement, which required it to make certain fringe benefit contributions to the Plan. (*Id.* ¶¶ 7-8.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

According to Mayer, two of its employees and part-owners, John and Vincent Mayer, worked for Mayer from January 1, 2007 through July 5, 2007, but did not work for Mayer after that time. (*Id.* ¶ 10.) Mayer allegedly reported to the Trustees that John and Vincent Mayer worked 1,060 and 1,600 hours, respectively, for the 2007 calendar year. (*Id.* ¶¶ 10, 11, 16.)

In 2008, James Egan & Associates, Ltd. (the "Auditor") audited Mayer on behalf of the Trustees to determine whether the number of hours worked by Mayer's Local 134 employees was consistent with the number of hours Mayer reported for the 2007 calendar year (the "Audit"). (*Id.* ¶ 9.) The Auditor allegedly determined that Mayer had ceased paying wages to John and Vincent Mayer on July 5, 2007 and that it did not know, based on Mayer's records that it had reviewed, whether John and Vincent Mayer had continued to work for Mayer after July 5, 2007. (*Id.* ¶¶ 12, 13.) Mayer alleges that the Auditor determined that a review of John and Vincent Mayer's personal income tax returns for 2007 was necessary to verify whether they were employed by another company or whether they received unemployment compensation after July 5, 2007. (*Id.* ¶ 14.) After the Auditor spoke with Michael D. Krantz, a Contributions Collection Manager acting on behalf of the Trustees, however, the Auditor declined to review the 2007 personal income tax returns for John and Vincent Mayer. (*Id.* ¶ 15.)

The Trustees thereafter determined that Mayer underpaid the fund contributions in the amount of $47,334.32, which was later reduced to $44,436.46. (*Id.* ¶ 19.) According to Mayer, the Trustees did not examine the relevant evidence showing the hours that John and Vincent Mayer actually worked in 2007 and instead assumed that they "must have worked a total of 1,920 hours each (40 hours per week for 48 weeks) in 2007." (*Id.* ¶¶ 17-18.)

On January 20, 2009, Mayer sent the Trustees a letter challenging the underpayment determination, and Mr. Krantz responded three days later that 1) John and Vincent Mayer fell within the owner-in-fact clause of the Principal Agreement and accordingly must be listed on Mayer's payroll as having worked 1,920 hours per calendar year regardless of their actual hours worked; and 2) if Mayer intended to appeal the results of the Audit, it must submit a letter and any supporting documentation by February 16, 2009. (*Id.* ¶ 21.) On February 11, 2009, Mayer sent an appeal letter to the Trustees along with copies of John and Vincent Mayer's unemployment records for 2007. (*Id.* ¶ 22.) The Trustees denied Mayer's appeal, allegedly ignoring the plain language of the Principal Agreement and the "conclusive evidence" of hours worked by John and Vincent Mayer. (*Id.* ¶ 23.) Because Mayer was unable to remit the $44,436.46 in fringe benefit fund contributions, the surety company through which Mayer obtained its Wage and Benefit Performance Bond canceled Mayer's bond, effectively putting Mayer out of business. (*Id.* ¶¶ 25-27.)

On December 1, 2011, the Court denied the Trustees' motion to dismiss, and on January 19, 2011, the Court denied the Trustees' motion for reconsideration of the Court's December 1, 2011 order. (R. 19, 26.) Mayer has since served its first requests for the production of documents and several deposition notices on the Trustees. (R. 29-3.) The Trustees seek entry of a protective order limiting discovery in this case to the administrative record. Mayer opposes the motion.

## LEGAL STANDARD

Rule 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c). A court "may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. . . ." *Id.* The moving party has the burden of showing good cause. *Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010). District courts have broad discretion in ruling on discovery matters. *See Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 629 (7th Cir. 2008); *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir.

2006) ("When reviewing a plan administrator's decision in the ERISA context, the district court has significant discretion to allow or disallow discovery requests.").

## ANALYSIS

The Court notes at the outset that the Trustees failed to comply with Rule 26(c)'s requirement that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). Because it is apparent from the parties' briefing that a meet and confer discussion would be futile in light of their drastically opposing positions, the Court will rule on the Trustees' motion despite its failure to include the Rule 26(c) certification. The Court, however, admonishes the Trustees to comply with this requirement in the future.

## I.     The Arbitrary and Capricious Standard of Review Applies

This case involves what is colloquially known as the "Owner in Fact" clause of the Principal Agreement, which provides as follows:

> If an Employer employs an Employee who is related to one of the owners of the Employer as a child, parent, sibling, in-law or spouse of either such owner or the owner's spouse, the Employer shall make fringe benefit contributions on behalf of such Employee on a full-time basis of not less than 40 hours per week for 48 weeks per calendar year; unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee actually worked fewer hours, in which case the Trustees may determine that additional contributions need not be paid on behalf of that relative beyond the hours they determined were actually worked.
>
> The Electrical Insurance Trustees are also authorized to require such full-time contributions by the Employer on behalf of an Employee who exercises significant control over the management and/or operation of the Employer's business, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee does not exercise such control.

(R. 29-1, Principal Agreement, Section 18.14.)

Pursuant to the Principal Agreement and the Insurance Agreement, the Trustees have discretionary authority with respect to matters involving, among other things, employer fringe benefit contributions. Specifically, the Insurance Agreement provides that:

> The Trustee shall have plenary power to make, from time to time, and to enforce such rules and regulations for the determination of eligibility for benefits, for the proper collection and handling of said Fund, for the allocation of benefits to those eligible for it, for the determination of who may be beneficiaries and the terms and conditions under which benefits shall be given to the beneficiaries and forfeited by them, and for the determination of methods of procedure and of every other question (irrespective of its nature) arising in the collection and the administration of said Fund, and generally in the carrying out of this Agreement, and in fully and completely accomplishing its purpose.

*****

(1)  In any controversy, claim, demand, suit at law or other proceeding between any member, beneficiary or any other person and the Trustees, the Trustees shall be entitled to rely upon any facts appearing in the records of the Trust, any instrument on file with the Trustees, with the Union or with the Employers, any facts certified to the Trustees by the Union of the Employers, any facts which are of public record and any other evidence pertinent to the issue involved.

(2)  To the fullest extent permitted by federal law, the Trustees shall have discretionary authority to determine all questions arising in connection with the Trust Fund or the operation thereof, whether as to any claim for benefits or as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument or as to any writing in connection with the operation of the Trust Fund or otherwise and the decision of a majority of the Board of Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.  Notwithstanding the foregoing, the Trustees may adopt general rules and regulations governing the disposition of claims for benefits and any decision on the disposition of a claim for benefits which is made in accordance with such rules and regulations shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder, to the same extent as if made by a majority of the Board of Trustees.

(R. 29-2, Insurance Agreement, Article First, Sections (g) and (o)).  Additionally, the Principal Agreement states that:

Controversies and Disputes.  In any controversy, claim, demand, suit at law or other proceeding between an Employer or any other person and the Trustees, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, certified by the Union or an Employer, any facts which are of public record, and any other evidence pertinent to the issue involved.

The Trustees have discretionary authority to determine all questions and controversies relating to the Trust, including the construction of any rules or regulations adopted by the Trustees.  The decision of the Trustees is binding upon all persons dealing with the Trustees.  If a determination of the Trustees is subject to review by a court or other authorized person or body, the decision by the Trustees must be sustained unless it is determined that the Trustees acted in an arbitrary and capricious manner.

(R. 29-1, Principal Agreement, Section 21.01(j)).

The parties dispute the Trustees' determination that Mayer did not demonstrate that John and Vincent Mayer actually worked fewer than 1920 hours per year and did not exercise significant control over the management and operation of Mayer.  The Trustees argue that, pursuant to the parties' agreements and Seventh Circuit law, the Court must review the Trustees' determination under the deferential arbitrary and capricious standard of review.  Under an arbitrary and capricious standard of review, the Court will overturn the Trustees' determination only if it is "completely unreasonable." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005)(citation omitted).[1]

---

[1] The Court does not address the Trustees' argument that Mayer's discovery requests are burdensome because, as explained more fully below, discovery outside of the administrative record in this case is not warranted.

Mayer does not dispute that it is bound by the terms of the Principal Agreement or that the proper standard of review in this case is arbitrary and capricious. Instead, Mayer argues that it is entitled to discovery to determine whether the Trustees properly examined (or gave correct weight to) the evidence Mayer presented and to "show how the Trustees have interpreted the relevant plan provisions in other cases." (R. 32 at 2.)

Pursuant to the Principal Agreement and the Insurance Agreement, the Trustees have discretionary authority to resolve disputes regarding Mayer's contributions to the fund. Moreover, the Principal Agreement, to which Plaintiff agreed to be bound, expressly provides that "[i]f a determination of the Trustees is subject to review by a court or other authorized person or body, the decision by the Trustees must be sustained unless it is determined that the Trustees acted in an arbitrary and capricious manner." (Principal Agreement, Section 21.01(j)). Accordingly, the arbitrary and capricious standard of review is appropriate in this case. *See Semien*, 436 F.3d at 813 ("where a plan administrator possesses discretionary authority, the district court reviews his or her decisions under the deferential arbitrary and capricious standard") (internal quotation marks and citations omitted); *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980 (7th Cir. 1999) ("Decisions of ERISA plan administrators presumptively receive *de novo* review, but if the plan establishes discretionary authority then review will be deferential."); *cf. Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 842 (7th Cir. 2009)("Unless a welfare-benefit plan confers interpretive or operational discretion on its administrator or insurer, the judiciary makes an independent decision about benefits.").[2]

## II. The Court's Review Is Limited to the Administrative Record and Discovery Outside of the Administrative Record Is Not Permitted

A court's review of a plan administrator's determination under an arbitrary and capricious standard is limited to the administrative record, and discovery is not generally permitted. *See Hess*, 423 F.3d at 662 (when the plan administrator has discretion to interpret the plan, the Seventh Circuit has "consistently held that [its] review is limited to the record before the administrative committee"); *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 490 n.7 (7th Cir. 2007) ("when a plan grants broad discretion to a plan administrator to interpret the plan and make benefit determinations, rendering its determinations subject only to deferential "arbitrary and capricious" review, discovery is generally not permitted") (citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004)); *Perlman*, 195 F.3d at 981-82 ("Deferential review of an administrative decision means review on the administrative record."). Although limited discovery outside of the administrative record may be appropriate in cases involving conflict of interest or bias on the part of the plan administrator, *see Semien*, 436 F.3d at 813-15, Mayer does not argue that these exceptions apply in this case.

Contrary to its assertion, Mayer does not need discovery outside of the administrative record to advance its argument that the Trustees failed to examine or give proper weight to the evidence that Mayer presented to

---

[2] Although, as Mayer argues, these cases involved suits by plan participants or beneficiaries under § 502(a)(1)(B), courts in this District and elsewhere in the Seventh Circuit have applied the arbitrary and capricious standard of review in a variety of ERISA cases, including those involving an employer's delinquent contributions. *See, e.g., Suburban Teamsters of N. Illinois v. Moser*, 867 F. Supp. 665, 670-71 (N.D. Ill. 1994) (court reviewed the trustees' determination that employer owed contributions pursuant to a collective bargaining agreement under an "arbitrary and capricious" standard where the agreement gave the trustees discretionary authority to resolve disputes as to employer contributions) (citing cases); *Central States, Se. and Sw. Areas Pension Fund v. Waste Mgmt.*, 268 F.R.D. 312, 315-16 (N.D. Ill. 2010) (same); *Wisconsin UFCW Unions & Emp'rs Health Plan v. Woodman's Food Mkt., Inc.*, 348 F. Supp. 2d 1005, 1007-08 (E.D. Wis. 2004) (same).

show the hours John and Vincent Mayer actually worked. Mayer had the opportunity to and indeed did submit documentation to the Trustees during its appeal of the Audit. *See* Compl. ¶¶ 21-22 (alleging that it submitted John and Vincent Mayer's unemployment records to the Trustees for the time period in question during its appeal). Therefore, any evidence that Mayer submitted to the Trustees in support of its appeal is properly part of the administrative record in this case.

The Court is also unpersuaded by Mayer's argument that courts in this District have allowed discovery in "this exact type of case." (R. 32, citing *Woldman v. County Line Cartage, Inc.*, No. 01 C 9414, 2003 WL 22995161, at *1 (N.D. Ill. Dec. 16, 2003); *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988); *Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1*, No. 00 C 1615, 2000 WL 1448660, at *1 (N.D. Ill. May 11, 2000)). Those cases are inapposite because none of them involved an arbitrary and capricious standard of review.

## CONCLUSION

In its discretion, the Court determines that discovery in this case is limited to the administrative record. The Court therefore grants the Trustees' motion for a protective order under Rule 26(c).