**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MAYER ELECTRICAL CONTRACTING, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | Case No. 11-cv-6118 ) ) |
| TIMOTHY FOLEY, MICHAEL CADDIGAN, LAWRENCE CRAWLEY, SAMUEL EVANS, JAMES NORTH, WILLIAM T. DIVANE, KENNETH BAUWENS, STEVEN DIAMOND, KEVIN M. O'SHEA, MICHAEL WALSDORF, as the ELECTRICAL INSURANCE TRUSTEES, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On September 1, 2011, Plaintiff Mayer Electrical Contracting, Inc. ("Mayer") filed its Complaint against Defendants Timothy Foley, Michael Caddigan, Lawrence Crawley, Samuel Evans, James North, William T. Divane, Kenneth Bauwens, Steven Diamond, Kevin M. O'Shea, and Michael Walsdorf, in their capacity as the Electrical Insurance Trustees (collectively, the "Trustees"), seeking a declaratory judgment. (R. 1.) Specifically, Mayer seeks a declaration that it does not owe $44,436.46 in delinquent fringe benefit contributions under a plan created pursuant to an agreement between the Electrical Contractors Association of the City of Chicago ("ECA") and Local 134, International Brotherhood of Electrical Workers ("Local 134"). Before the Court are the Trustees' motion for summary judgment under Federal Rule of Civil Procedure ("Rule") 56(a) and Mayer's cross-motion for summary judgment. For the following reasons, the

Court grants the Trustees' motion and denies Mayer's motion.

## BACKGROUND

**I.     Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56. 1(b)(3)(B) Response, but must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as

it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon*, 233 F.3d at 528. The Court may also disregard statements and responses that do not properly cite to the record. *See Cady*, 467 F.3d at 1060; *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     The Parties and the Relevant Agreements

The Trustees are the duly-appointed and acting trustees under an agreement between the ECA and Local 134. (R. 52, Defs.' Rule 56.1 Stmt. Facts ¶ 3.) Mayer is an electrical contracting company, which, at various times, employed members of Local 134. (*Id.* ¶ 4; R. 56, Plf.'s Add'tl Stmt. Facts ¶ 25.[1]) Mayer signed a Letter of Assent, effective February 4, 1998, thereby agreeing to the terms of a collective-bargaining agreement entered into between the ECA and Local 134 (the "Principal Agreement"). (Defs.' Rule 56.1 Stmt. Facts ¶ 4.) Under the Principal Agreement, Mayer agreed to pay certain wage rates and to file a monthly report with,

---

[1] Mayer submitted "Additional Facts in Support of its Cross-Motion for Summary Judgment and the Denial of Defendants' Motion for Summary Judgment," which is essentially a combination of a Local Rule 56.1(b)(3)(C) Statement of Additional Facts (in response to the Trustees' motion for summary judgment) and a Local Rule 56.1(a)(3) Statement of Facts in support of its cross-motion for summary judgment. Despite filing a reply in support of their motion for summary judgment, the Trustees did not respond to these additional facts. The Court therefore deems Mayer's additional facts admitted to the extent Mayer supports them with evidence in the record. *See* Local Rule 56.1(a)-(b). *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The Court, however, disregards the improper inferences, argument, and legal conclusions included in Mayer's statement of additional facts.

and make a monthly contribution to, the Trustees to cover certain fringe benefits. (*Id.* ¶ 5.) The exact amount of the fringe benefit contributions that an employer has to pay depends upon the number of hours Local 134 members have worked for that particular employer. (Plf.'s Add'tl Stmt. Facts ¶ 26.)

The parties' present dispute involves the so-called "owner in fact" clause in the Principal Agreement, which provides, in relevant part, as follows:

> If an Employer employs an Employee who is related to one of the owners of the Employer as a child, parent, sibling, in-law or spouse of either such owner or the owner's spouse, the Employer shall make fringe benefit contributions on behalf of such Employee on a full-time basis of not less than 40 hours per week for 48 weeks per calendar year; unless the Employer can demonstrate to the satisfaction of the Electrical Insurance Trustees that the Employee actually worked fewer hours, in which case the Trustees may determine that additional contributions need not be paid on behalf of that relative beyond the hours they determined were actually worked.
>
> The Electrical Insurance Trustees are also authorized to require such full-time contributions by the Employer on behalf of an Employee who exercises significant control over the management and/or operation of the Employer's business, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee does not exercise such control.

(Defs.' Rule 56.1 Stmt. Facts ¶ 6.)

Section 4.21(d) of the Principal Agreement provides that "[u]pon layoff or discharge of any employee, the employer shall fax or mail a copy of the severance notice to the Referral Office at: Local Union #134, IBEW Referral Office, 1140 Lake Street, Oak Park, IL 60301, Phone – (312) 466-8300 Fax – (312) 466-8313." (*Id.* ¶ 17; Trustees' Reply at 4.[2]) Local 134's

---

[2] The Trustees indicate in their Reply brief that they inadvertently cited to the wrong section number of the Principal Agreement in paragraph 17 of their Rule 56.1 Statement of Facts. The Court has reviewed the correct citation that the Trustees offered in their Reply brief and finds that it contains the language set forth in paragraph 17 such that there is no genuine dispute as to any material fact in paragraph 17.

Journeyman Wireman Referral Policy provides, in part, that "[a]ll Applicants for employment shall fill out a 'Group Registration Application' . . . . The Applicant shall sign the appropriate 'Out of Work' Group . . . . Applicants must re-register at the Referral Office . . . monthly." (Defs.' Rule 56.1 Stmt. Facts ¶ 18.)

The Health Care Booklet for Electrical Construction Workers (the "Health Care Booklet") states as follows:

> If your participating employer has not submitted contributions for the hours you worked, coverage for you and your covered dependents will be suspended if you continue working for that employer while they are delinquent. Your coverage will be retroactively reinstated once your employer pays all amounts due the [sic] Fund Office or if you stop working for that employer. You must stop work for that employer and sign the out-of-work list at the Referral Hall within seven days after being notified of your suspension of benefits.

(*Id.* ¶ 20.[3]) The Health Care Booklet defines the "Referral Hall" as "the Union office where members must register as being available for work." (*Id.*) Pursuant to Section 21.01(f)(3) of the Principal Agreement, while an employee is employed by a delinquent employer, he will not receive health and welfare benefits.[4] (*Id.* ¶ 19.)

## B. The Mayer Audit

In 2008, the Trustees, through James Egan & Associates, Ltd., conducted an audit of Mayer's books and records to determine Mayer's compliance with the Principal Agreement,

---

[3] The Trustees erroneously cited to Exhibit J of Mr. Divane's Affidavit in support of paragraph 20. Instead, the proper citation, as Mayer notes, is Exhibit E. (R. 51-5.) Additionally, the Trustees cited only a portion of the quoted text from the Health Care Booklet in their Rule 56.1 Statement of Facts. To provide context, the Court includes the entire paragraph as it appears in the Health Care Booklet. (R. 51-5 at 33.)

[4] The Trustees assert that under Section 21.01(f)(3) of the Principal Agreement, "an employees [sic] is still employed until he signs up at the Referral Hall." That assertion, however, is not supported by Section 21.01(f)(3).

5

covering the period from January 1, 2007 through December 31, 2007. (*Id.* ¶ 10; Plf.'s Add'tl Stmt. Facts ¶ 27.) The auditor made the following findings:

> (a) Mayer is an Illinois corporation. The shares are owned by Gina K. Mayer (1/3), John J. Mayer (1/3) and Vincent M. Mayer (1/3).
>
> (b) Gina Mayer informed the auditor that John Mayer and Vincent Mayer do not work with the tools of the trade; John and Vincent supervise, but most of their time is spent in the office.
>
> (c) Mayer may owe additional fringe-benefit contributions under the Owner-in-Fact clause unless Mayer can demonstrate to the satisfaction of the Trustees that its employees actually worked fewer hours or the employees did not exercise significant control over Mayer.

(Defs.' Rule 56.1 Stmt. Facts ¶ 11; Plf.'s Addt'l Stmt. Facts ¶ 28; R. 51-10 at 9.)

Both John and Vincent Mayer were insured throughout the audit period. (Defs.' Rule 56.1 Stmt. Facts ¶ 16.) In 2007, the Trustees paid a total of $18,432.38 in dental, medical, and prescription claims on behalf of John Mayer and $11,134.20 on behalf of Vincent Mayer. (*Id.*)

The auditor concluded that Mayer made fringe benefit contributions to the Trust Funds on behalf of John Mayer and Vincent Mayer for the first half of 2007. (Plf.'s Add'tl Stmt. Facts ¶ 29; R. 51-10 at 9; R. 51-9 at 9.) The auditor's report provides that "Mayer Electrical ceased paying wages to John Mayer and Vincent Mayer on July 5, 2007 (for the period ended June 30, 2007). It is not known whether they continued working for this company after this date and did not receive wages." (Plf.'s Add'tl Stmt. Facts ¶ 25; R. 51-10 at 9.) It further notes that "[a] review of [John and Vincent Mayer's] personal income tax returns . . . may assist in verifying whether they were employed by another company or received unemployment compensation." (Plf.'s Add'tl Stmt. Facts ¶ 30; R. 51-10 at 9.) After the auditor's discussion with Michael Krantz, "it was decided to include in [the auditor's] payroll audit findings hours on both

6

individuals based upon taking the annual hours required for an owner-in-fact (1,920 total hours = 40 hours per week for 48 weeks) less the hours reported [to EIT and reciprocated in] and allocate that difference amongst the remaining six (6) months of the year (2007)." (Plf.'s Add'tl Stmt. Facts ¶ 31; R. 51-10 at 9.)

The auditor concluded that Mayer owed $40,508.10 in delinquent fringe benefit contributions, and the Trustees determined that Mayer owed such amount, plus liquidated damages and an audit fee. (Plf.'s Add'tl Stmt. Facts ¶ 31; Defs.' Rule 56.1 Stmt. Facts ¶ 10.) On December 11, 2008, the Trustees served a demand on Mayer for $47,334.32 in delinquent fringe benefit contributions. (Defs.' Rule 56.1 Stmt. Facts ¶ 10; R. 51-11.) The Trustees, however, now claim that Mayer owes $44,436.46 in contributions. (Defs.' Rule 56.1 Stmt. Facts ¶ 10; Plf.'s Rule 56.1(b)(3) Resp. ¶ 10; R. 51-16.)

  C. **Mayer's Appeal of the Audit**

Mayer appealed the Trustees' decision by correspondence dated January 20, 2009, arguing that Vincent and John Mayer were unemployed after July 5, 2007 and did not receive insurance coverage or benefits during the period in which Mayer allegedly did not pay contributions.[5] (Defs.' Rule 56.1 Stmt. Facts ¶¶ 12, 21; Plf.'s Add'tl Stmt. Facts ¶ 32.) On January 23, 2009, the Trustees sent a letter to Mayer indicating that it had until February 16, 2009 to appeal the results of the audit by submitting the appeal in writing with any supporting documentation. (Plf.'s Add'tl Stmt. Facts ¶ 33; R. 51-13.) The Trustees further stated in the letter that

---

[5] Despite this representation, it is undisputed that both John and Vincent Mayer were insured throughout the audit period. (Defs.' Rule 56.1 Stmt. Facts ¶ 16.)

7

> In reference to your claim that Mayer was not employed during the time period indicating a shortage. Please be advised that Gina, John and Vincent Mayer fall under the "OIF" clause of the Principal Agreement which stipulates that you are to be on the payroll and report (at a minimum) 1,920 hours per calendar year.

(*Id.*) On February 11, 2009, Mayer faxed a letter to the Trustees, which stated that

> Relating to the time period in question. Due to lack of work and poor economy we Were not able to keep our selves employed steadily. We have paid into the fund for all hours that were actually worked. For the month of January thru June of 2007.

(Defs.' Rule 56.1 Stmt. Facts ¶ 21; Plf.'s Add'tl Stmt. Facts ¶ 34; R. 51-14.) Mayer also submitted unemployment records from the Illinois Department of Employment Security, which indicated that Vincent and John Mayer received unemployment compensation from July 15, 2007 through September 22, 2007.[6] (Plf.'s Add'tl Stmt. Facts ¶ 35; R. 51-14 at 5.)

John and Vincent Mayer did not register at the Referral Hall. (Defs.' Rule 56.1 Stmt. Facts ¶ 23.) A May 6, 2009 memorandum from one of the Trustees' employees to Mr. Divane and Mr. Caddigan, titled "Mayer Electrical Contracting, Inc. payroll audit for the period January 1, 2007 to December 31, 2007," provides that John and Vincent Mayer were "insured during the entire audit period and [were] not registered and available for work during the same period." (*Id.* ¶ 22; R. 51-15.) On May 8, 2009, the Trustees denied Mayer's appeal and determined that Mayer was liable for additional fringe-benefit contributions for John and Vincent Mayer under the owner-in-fact clause. (Defs.' Rule 56.1 Stmt. Facts ¶ 14; Plf.'s Rule 56.1(b)(3) Resp. ¶ 14; R. 51-16.)

---

[6] In their Additional Statements of Fact, Mayer states that the unemployment records show that John and Vincent Mayer "began receiving unemployment compensation beginning July 15, 2007." (Plf.'s Add'tl Stmt. Facts ¶ 35.) While this is true, the records further show that John and Vincent Mayer received those benefits through September 22, 2007. (R. 51-14 at 5.)

### D. The Trustees' Discretionary Authority

The Principal Agreement provides for an arbitrary and capricious standard of review of the Trustees' determinations regarding contributions:

> Controversies and Disputes. In any controversy, claim, demand, suit at law or other proceeding between an Employer and or any other person and the Trustees, the Trustees are entitled to rely upon any facts appearing in the records of the Trustees, certified by the Union or an Employer, any facts which are of public record, and any other evidence pertinent to the issue involved.
>
> The Trustees have discretionary authority to determine all questions and controversies relating to the Trust. The decision of the Trustees is binding on all persons dealing with the Trustees. If a determination of the Trustees is subject to review by a court or other authorized person or body, the decision by the Trustees must be sustained unless it is determined that the Trustees acted in an arbitrary and capricious manner.

(Defs.' Rule 56.1 Stmt. Facts ¶ 7.) Additionally, an insurance trust agreement (the "Insurance Agreement"), pursuant to which the Trustees are appointed,[7] describes the Trustees' duties and responsibilities as follows:

> The Trustees shall have plenary power to make, from time to time, and to enforce such rules and regulations for the determination of eligibility for benefits, for the proper collection and handling of said Fund, for the allocation of benefits to those eligible for it, for the determination of who may be beneficiaries and the terms and conditions under which benefits shall be given to the beneficiaries and forfeited by them, and for the determination of methods of procedure and every other question (irrespective of its nature) arising in the collection and administration of said Fund, and generally in the carrying out of this Agreement, and in fully and completely accomplishing its purpose.

(*Id.* ¶ 8.) The Insurance Agreement further provides that

> To the fullest extent permitted by federal law, the Trustees shall have the

---

[7] Paragraph 8 of the Trustees' Statements of Fact states that the "plaintiffs" are appointed as trustees pursuant to the Insurance Agreement. (*Id.* ¶ 8.) Mayer admitted this fact. (R. 56, Plf.'s Rule 56.1(b)(3) Resp. ¶ 8.) The Court assumes, however, that this was a scrivener's error, given that Mayer is not a trustee.

9

> discretionary authority to determine all questions arising in connection with the Trust Fund . . . or as to the construction of the language or meaning of . . . this instrument or as to any writing in connection with the operation of the Trust Fund or otherwise and the decision of a majority of the Board of Trustees, if made in good faith, shall be binding upon all persons dealing with the Trust Fund or claiming any benefits thereunder . . . .

(*Id.* ¶ 9.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (internal citations omitted).

**ANALYSIS**

The sole issue before the Court is whether the Trustees' determination that Mayer owes additional fringe benefits on behalf of John and Vincent Mayer is arbitrary and capricious. *See* R. 34, Order at 4-5 (determining that, pursuant to the parties' agreements and Seventh Circuit law, "the arbitrary and capricious standard of review is appropriate in this case") (citing cases). The arbitrary and capricious standard of review is "'the least demanding form of judicial review.'" *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (quoting *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 607 (7th Cir. 1999)). Under this standard, a court will uphold the plan administrator's (here, the Trustees') decision "unless it is 'downright unreasonable.'" *Killian v. Concert Health Plan*, 680 F.3d 749, 755 (7th Cir. 2012) (quoting *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 991 (7th Cir. 2005)). Whether the court "would have reached the same conclusion is irrelevant," *Hess*, 423 F.3d at 658 (citation and internal quotations omitted), and the administrator's decision "'prevails if it has rational support in the record.'" *Killian*, 680 F.3d at 755 (quoting *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 812 (7th Cir. 2006)). Although the arbitrary and capricious standard of review "is deferential, it is not a rubber stamp." *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir. 2009). Therefore, the relevant inquiry is whether there is rational support in the record for the Trustees' determination that Mayer failed to sufficiently demonstrate that John and Vincent Mayer actually worked fewer than 1920 hours during 2007 and did not exercise significant control over the management and/or operation of Mayer.

After reviewing the undisputed facts as set forth above, the Trustees' determination has rational support in the record. *See Killian*, 680 F.3d at 755. The Court, therefore, will not

second-guess it. Mayer argued in its appeal, and continues to argue in this proceeding, that the Trustees' determination was arbitrary and capricious because Mayer provided documentation from the Illinois Department of Employment Security indicating that John and Vincent Mayer received unemployment benefits beginning July 15, 2007. (Plf.'s Add'tl Stmt. Facts ¶ 35; R. 51-14 at 5.) According to Mayer, the Trustees should have considered such documentation sufficient to demonstrate that John and Vincent Mayer actually worked fewer than 1920 hours during 2007. According to the Trustees' argument, such documentation establishes only that John and Vincent Mayer received unemployment compensation and is insufficient to demonstrate that they did not work for Mayer during the relevant time period.

The Court cannot conclude, based on the undisputed facts in the record, that the Trustees' determination that Mayer failed to sufficiently demonstrate that John and Vincent Mayer did not work for Mayer during the second half of 2007 lacks rational support.[8] Even assuming, for the sake of argument, that the documentation from the Illinois Department of Employment Security is conclusive and irrefutable evidence that John and Vincent Mayer did not work for Mayer during the time they received unemployment benefits, that documentation shows only that John and Vincent received unemployment compensation from July 15, 2007 through September 22, 2007. The documentation does not address the time period from September 22, 2007 through the end of 2007.

---

[8] According to Mayer, the Trustees disregarded the auditor's "recommendation" to view John and Vincent Mayer's personal tax returns to determine whether they had received unemployment compensation or wages from a different company during the relevant period. While the auditor noted that it may be helpful to review such recommendation, it did not "recommend" such a course of action in the sense that Mayer advances. Nevertheless, Mayer did not provide personal tax returns to the Trustees during its appeal, despite having the opportunity to do so.

Moreover, as the Trustees point out, Mayer did not address during the appeal, nor does it address now, the remaining portion of the Owner-in-Fact clause, which provides another basis for the Trustees' determination. That provision provides that the Trustees are

> authorized to require . . . full-time contributions by the Employer on behalf of an Employee who exercises significant control over the management and/or operation of the Employer's business, unless the Employer can demonstrate to the satisfaction of the Trustees that the Employee does not exercise such control.

(Defs.' Rule 56.1 Stmt. Facts ¶ 6.) The auditor concluded that John and Vincent Mayer each owned one-third of Mayer during the relevant audit period and that they "do not work with the tools [of the trade]." (*Id.* ¶ 11.) Rather, they have supervisory roles at Mayer and spend most of their time in the office. (*Id.*) Moreover, John and Vincent Mayer were insured throughout 2007, and there is no indication in the record that Mayer ever provided notice to the Referral Office that it laid off or discharged John and Vincent Mayer. *See* Defs.' Rule 56.1 Stmt. Facts ¶ 17; Trustees' Reply at 4 (Section 4.21(d) of the Principal Agreement requires an employer to fax or mail a copy of the severance notice to the Referral Office upon layoff or discharge of an employee).

The Trustees have "discretionary authority to determine all questions and controversies relating to the Trust" and plenary power to enforce the rules and regulations related to the collection of fringe benefits. (Defs.' Rule 56.1 Stmt. Facts ¶¶ 8-9.) In light of the auditor's findings set forth above, it was not "downright unreasonable" for the Trustees to conclude that John and Vincent Mayer were "Owners-in-Fact" under the above-cited provision of the Principal Agreement, and therefore that Mayer had to make full-time contributions on their behalf. *See Killian*, 680 F.3d at 755. Indeed, the Trustees explained in their January 23, 2009 letter that John and Vincent Mayer's claims of unemployment were not dispositive of the dispute and that they

both fell within the "Owner-in-Fact" provision of the Principal Agreement. Yet, Mayer continued to rely solely on its unemployment argument without addressing or offering any evidence that Vincent and John Mayer did not, as one-third owners of the company, exercise significant control over the management and/or operation of Mayer. As such, the Trustees' determination "has rational support in the record." *Id.*

## CONCLUSION

For the reasons set forth above, the Court grants the Trustees' motion for summary judgment and denies Mayer's cross-motion for summary judgment.

**Date: July 10, 2012**

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**